UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| DANYBELKIS VASQUEZ-RODRIGUE, | )   Criminal No. 21-cr-10010-FDS-2 |
| a/k/a "Dany," | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S MOTION IN LIMINE TO ADMIT
STATEMENTS OF COCONSPIRATORS**

The United States, by its undersigned attorneys, hereby moves this Court to allow

statements made by the defendant Danybelkis VASQUEZ-RODRIGUE's coconspirators in

evidence at trial.  The government plans to offer evidence through in-person recordings, phone

calls, voice memos, text messages, and testimony regarding statements made by (1) VASQUEZ-

RODRIGUE's codefendant, Saury RODRIGUEZ-RUIZ, the individual who sold the kilogram of

fentanyl to the cooperating witness (the "CW") for which VASQUEZ-RODRIGUE collected the

payment, (2) the Mexican-based drug supplier known as "Riky" (or "Teka") who contacted the

CW to arrange for the CW to make money payment to VASQUEZ-RODRIGUE for the kilogram

of fentanyl, and (3) the individual known as "Roladi," who picked up a portion of the money from

the CW for the kilogram of fentanyl supplied by RODRIGUEZ-RUIZ.  These three individuals

(RODRIGUEZ-RUIZ, Riky or Teka, and Roladi) were all members of the same conspiracy as

VASQUEZ-RODRIGUE with the goal of distributing fentanyl.   The coconspirators

communicated with the CW, a confidential source for the government (the "CS"), and each other

about the fentanyl deal and money pickups in furtherance of the goals of the conspiracy.  Finally,

all of these statements are relevant to the crime of conspiracy for which VASQUEZ-RODRIGUE

is charged.  For those reasons, the Court should admit the statements as evidence at trial as coconspirators' statements under Federal Rule of Evidence 801(d)(2)(E).

## FACTUAL BACKGROUND[1]

In November 2020, the CS received the telephone number for co-defendant Saury RODRIGUEZ-RUIZ from a mutual associate in the Dominican Republic who reported to the CS that the CS could obtain narcotics from the user of that telephone number.  The CS made recorded calls to the telephone number and spoke with RODRIGUEZ-RUIZ about purchasing fentanyl and cocaine.  The CS agreed to purchase one kilogram of fentanyl from RODRIGUEZ-RUIZ for $42,000 and informed RODRIGUEZ-RUIZ that another person, the CW, would pick up the drugs. RODRIGUEZ-RUIZ agreed that the CS could pay for the fentanyl at a later date.

On November 24, 2020, after additional recorded calls between the CW and RODRIGUEZ-RUIZ, the CW met with RODRIGUEZ-RUIZ and received the kilogram of fentanyl.  The meeting was audio/video recorded.  On December 3, 2020, investigators learned that RODRIGUEZ-RUIZ had been arrested on state charges and was being held at the Essex County House of Correction.

After RODRIGUEZ-RUIZ's arrest, an individual in Mexico identified only as "Riky" reached out to the CS and told the CS to pay RODRIGUEZ-RUIZ's "girl" for the fronted fentanyl. The CS asked if he could pay someone else because he did not want to do business with women. Riky told the CS that he was the owner of the fentanyl and that he had "a guy and a girl" who could pick up payment. Riky then provided the phone number for an unidentified male known only as "Roladi."

---

[1] The government provided a more detailed statement of facts in its trial brief, filed separately.

On December 16, 2020, the CW spoke with Roladi and discussed meeting in Lawrence. The CW then received a call from VASQUEZ-RODRIGUE.  During the call, VASQUEZ-RODGRIGUE told the CW that RODRIGUEZ-RUIZ was her "husband" and that the CW should meet her in Lawrence to pay for the fentanyl.  In picking the location of the meeting, VASQUEZ-RODRIGUE referred to the same place that the CW had met with RODRIGUEZ-RUIZ ("I'll call you, so you can head towards the address where you got together that day with my husband.").

Once the CW got to Lawrence and was preparing for the money drop with agents, the CW called VASQUEZ-RODRIGUE, but she did not answer her phone.  When the CW could not get in touch with VASQUEZ-RODRIGUE, the CW made a recorded call to Riky, during which Riky directed the CW to meet with Roladi ("the guy") to make the payment.  The CW then met with Roladi and paid him $10,000.  That meeting was surveilled and recorded.  Shortly after the meeting with Roladi, VASQUEZ-RODRIGUE called the CW.  During the call, the CW told VASQUEZ-RODRIGUE that Riky sent him to give the money to Roladi because she did not answer her phone. VASQUEZ-RODRIGUE told the CW, "Let me call him then…  Listen to what we are going to do.  You delivered to him already.  That was the first time and the last time you are going to deliver to that guy… This is my number… If anything happens, you call me at this number."  She then asked the CW how much the CW paid the guy, and the CW said, "10."  The CW told VASQUEZ-RODRIGUE that he knew he needed to come back with more money, and VASQUEZ-RODRIGUE then said, "I will communicate with, with whoever, whoever you delivered to now, for him to give me that money.  Then, when you deliver something again, whatever it is, you give me a call on this phone."  She went on to tell the CW, "You understand me, it's a business that you have to be very careful about, that you can't be involving so many people in this… My husband left me in charge of that because I more or less understand the business, I understand how

everything moves, because I've been in that for a couple of years, you know what I mean?" VASQUEZ-RODRIGUE told the CW to call her if he needed anything and to save her number under the name "La Morena."

In December 2020, the CW spoke with both Riky and VASQUEZ-RODRIGUE regarding making the remaining payment for the kilogram of fentanyl. After making arrangements with VASQUEZ-RODRIGUE, the CW met with her in an audio/video recorded meeting and paid her the remaining $32,000 for the kilogram of fentanyl.

On January 14, 2021, investigators arrested VASQUEZ-RODRIGUE. She subsequently consented to the search of two of her cell phones. On those phones, investigators found additional communications between VASQUEZ-RODRIGUE, Riky (who she listed in her contacts as "Teka" but used the same phone number as Riky), and Roladi. Specifically, she had numerous communications with Riky, in which Riky provided her names and information for recipients for money payments, and VASQUEZ-RODRIGUE confirmed that she had wired money to those recipients by providing pictures of receipts. Additionally, after Roladi picked up $10,000 from the CW on December 16, 2020, VASQUEZ-RODRIGUE communicated with Roladi to get that money, and then VASQUEZ-RODRIGUE communicated with "Teka" (Riky) letting him know she had collected the money and following his instructions as to whom to send the money. Finally, investigators collected jail calls between VASQUEZ-RODRIGUE and RODRIGUEZ-RUIZ, in which they discussed the December 16 and 30, 2020 money payments and the drug trafficking business.

<u>ARGUMENT</u>

Federal Rule of Evidence 801(d)(2)(E) provides that statements "offered against an opposing party and . . . made by the party's coconspirator during and in furtherance of the

conspiracy" are not hearsay.  The First Circuit's "decision in *Petrozziello* explains that such a statement is admissible when the trial judge finds 'it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy.'"  *United States v. Ruiz*, 999 F.3d 742, 748 (1st Cir. 2021) (quoting *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977)).  "A district court faced with a challenge to the admission of a co-conspirator's statement must provisionally admit the statement and then wait until the end of the trial to consider whether, in light of all the evidence, the following four conditions are satisfied by a preponderance of the evidence: (1) a conspiracy existed; (2) the defendant was a member of the conspiracy; (3) the declarant was also a member of the conspiracy; and (4) the declarant's statement was made in furtherance of the conspiracy."  *United States v. Diaz*, 670 F.3d 332, 348 (1st Cir. 2012).  "[T]he proponent of a statement must introduce some 'extrinsic evidence' of a conspiracy between the defendant and the declarant. In this context, extrinsic evidence means 'other evidence sufficient to delineate the conspiracy and corroborate the declarant's and the defendant's roles in it.'"  *Ruiz*, 999 F.3d at 748 (quoting *United States v. Piper*, 298 F.3d 47, 52 (1st Cir. 2002)).[2]

Because the Court must consider the co-conspirators' statements but cannot rely solely on the statements themselves to establish "the existence of the conspiracy or participation in it," Fed. R. Evid 801(d)(2), the government intends to introduce sufficient extrinsic evidence to meet the criteria for admissibility.  First, VASQUEZ-RODRIGUE's statements themselves are admissible under Federal Rule of Evidence 801(d)(2)(A) as statements of an opposing party and provide

---

[2] Additionally, the statements of the CW and the CS made during conversations with RODRIGUEZ-RUIZ, Riky, and Roladi are also admissible in order to give context to the properly admissible statements of the coconspirators. *United States v. Catano*, 65 F.3d 219, 225 (1st Cir. 1995) (in evaluating whether an informant's statements in a conversation with Defendant should be admitted, the First Circuit held that "[Defendant's] part of the conversations constituted non-hearsay admissions of a party. [Informant's] part of the conversations served as reciprocal and integrated utterances, reasonably required to place [Defendant's] admissions into context and make them intelligible to the jury.").

sufficient extrinsic evidence to satisfy the requirements for admission of her coconspirators'
statements. *See United States v. Mitchell*, 596 F.3d 18, 24 (1st Cir. 2010) ("In any event, the
government offered substantial evidence . . . to establish that [Defendant] was an active conspiracy
member.  The government offered recordings of phone calls, which came into evidence as the
defendant's own admissions, in which [Defendant] discussed drug-related matters in code with
other conspiracy members.").  Here, the government intends to offer recorded text messages and
calls between VASQUEZ-RODRIGUE and other conspiracy members, RODRIGUEZ-RUIZ,
Riky ("Teka"), and Roladi, in which they discussed money payments for the kilogram of fentanyl
sold to the CW and other drug and money transactions.  Specifically, the defendant asked Roladi
for the $10,000 the CW had paid him.  Additionally, the defendant regularly communicated with
Riky ("Teka") regarding money transmissions to recipients provided by Riky ("Teka").  Finally,
the defendant discussed the money payments for the kilogram of fentanyl with RODRIGUEZ-
RUIZ, her "husband," the man who actually delivered the kilogram of fentanyl.

Additionally, VASQUEZ-RODRIGUE's meeting with the CW on December 30, 2020, in
which he paid her $32,000, is evidence that VASQUEZ-RODRIGUE was a member of a drug-
trafficking conspiracy with RODRIGUEZ-RUIZ, Riky ("Teka"), and Roladi.  First,
RODRIGUEZ-RUIZ actually sold the drugs to the CW for which the defendant was receiving
payment.  Second, Riky introduced the CW to the defendant in the first instance as RODRIGUEZ-
RUIZ's "girl" who would accept the payment.  Lastly, the evidence is that the defendant ultimately
collected all of the money owed for the kilogram of fentanyl that RODRIGUEZ-RUIZ delivered
to the CW.  The defendant collected the $10,000 from Roladi that the CW paid Roladi on
December 16, 2020, and she also met with the CW on December 30, 2020 and collected the final
payment of $32,000.  In addition to the statements themselves, which clearly show the existence

of the conspiracy and the co-conspirators places within it, this extrinsic evidence is sufficient for the Court to determine that VASQUEZ-RODRIGUE was a member of this conspiracy and to admit these statements as co-conspirators' statements.

<u>CONCLUSION</u>:

For all the foregoing reasons, the government respectfully requests that the Court admit statements made by RODRIGUEZ-RUIZ, Riky ("Teka"), and Roladi as co-conspirators' statements under Federal Rule of Evidence 801(d)(2)(E).

Dated: August 2, 2022

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:     /s/ Stephen W. Hassink
        Alathea E. Porter
        Stephen W. Hassink
        Assistant United States Attorneys

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Stephen W. Hassink
Stephen W. Hassink
Assistant United States Attorney

Date: August 2, 2022

7